IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                     No. CR 08-2642 MV

CARL BURLESON,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant's Motion to Suppress Evidence

(Doc. No. 21).  The Court conducted a hearing on the motion on September 8, 2009.  After

considering the motion, response, reply, surreply, briefs, relevant law, evidence and arguments,

and being otherwise fully advised of the premises, the Court finds the motion should be

**GRANTED** for the reasons stated herein.

**FACTUAL BACKGROUND**

The parties present different versions of the facts at issue in their briefs.  However, at the

hearing on Defendant's motion, only one witness testified, the arresting officer, Jeff Kuepfer.

The Court finds Officer Kuepfer largely credible, but with a few inconsistencies in his testimony

and, on at least one occasion, a reluctance to take a definitive position about pertinent facts that

may undermine the legal theory supporting his actions.  However, the Court does not find

support for the version of events described by Defendant in his Motion to Suppress Evidence.

Therefore, the facts stated here are those described by Officer Kuepfer.

On May 2, 2008, Defendant and two other individuals were walking down 16th Street, a

residential area, in Roswell, New Mexico at approximately midnight.  One of the individuals was

carrying a young pit bull dog.  The three young men[1] were walking abreast in the street into the

oncoming lane of traffic.  Officer Kuepfer testified that the area had been having problems

recently with criminal damage and vehicle burglaries.  He also said a house located within a

couple blocks of Defendant's location had been shot at only a few days earlier.  One individual

whose car had been vandalized in the area had requested more police presence in the

neighborhood.  Therefore, Officer Kuepfer was conducting extra patrols in the area.  No reports

had been made of criminal activity occurring in the area that night, nor was Officer Kuepfer

investigating any specific activity.  He had no information that Defendant or his companions

were engaged in criminal activity other than his own observations.  Instead, Officer Kuepfer said

he was "being proactive."  (Tr. at 23.)

Officer Kuepfer approached the individuals in his patrol car from behind and pulled over

on the opposite side of the road.  He illuminated the street with his spotlight, pointing it towards

the ground near the center of the road in the direction the individuals were walking.  Officer

Kuepfer described the area as "not well lit" but with "some light."  (Tr. at 9.)  According to

Officer Kuepfer, light was coming from a streetlight on the next block and from the houses in the

area.

Officer Kuepfer said he stopped Defendant and his companions because they were

walking in the street, not on the side of the road or on the adjacent dirt path, and because they

were carrying a dog, which he found odd.  Officer Kuepfer said the individuals were not doing

anything unusual.  (Tr. at 37.)  Officer Kuepfer stopped his car to talk to the men and advise

them that it is a violation of the law to walk in the street and to find out why they were carrying a

---

[1] Officer Kuepfer testified that Defendant was 23 years old at the time of the arrest and his two male companions were under 18, or close to it.  (Tr. at 45.)

dog, which he thought could have been stolen.  Upon exiting his vehicle, Officer Kuepfer said he

told them, "hey, fellas, hold on here a minute, I got to talk to you." (Tr. at 12.)  He said he did

not use a loud tone of voice or give the individuals an order.  Instead, according to him, he just

said "hey guys, hold up, I got to talk to you." (Tr. at 13.)  Officer Kuepfer said when he first

approached them, he:

> Basically said, Hey, how you guys doing tonight?  Just, what's going on?  Where
> are you heading?  And through just talking to them, I found out that they were
> heading home, that the dog was theirs, that the reason why they were carrying the
> dog was because, if they put him down, he'd run off from them.  So that made
> sense to me, okay.

(Tr. at 13.)

According to Officer Keupfer, it was not his intention to issue a citation to Defendant and

his companions for a traffic violation.  He only intended to give them a "verbal warning"

because most people do not know that walking in the middle of the street is a traffic violation.

(Tr. at 19.)  He said he has written two citations to other people in the past for walking in the

street who did not believe it is a crime, but that was not his preferred method for dealing with the

offense.  (Tr. at 20.)

Concerning the dog, Officer Kuepfer testified it "wasn't acting weird.  It was kind of

wiggling around, which would lead me to believe that if they did put the dog down, maybe he's

gonna run.  So, that was their reason for not letting the dog walk with them, because the dog

would run away if they put him on the ground." (Tr. at 39.)  He affirmed the dog was not acting

like he did not know the person carrying it.  *Id.*  He described the dog as a "young, adolescent

dog." (Tr. at 41.)  He said the dog did not have a leash and he believes it did not have a collar or

tags.  *Id.*  He also said that he could see that the dog was an adolescent with no leash and

possibly no collar from the vantage point of his patrol car before he stopped and approached the

men.  (Tr. at 41-42.)  Finally, Officer Kuepfer affirmed that, with respect to the dog, he was

"going to ascertain whether it was stolen before [he] let these individuals go."  (Tr. at 32.)

Officer Kuepfer stated he was satisfied with the explanation given by the Defendant and his

companions concerning the dog.

    After Officer Kuepfer advised Defendant and his companions that they should not be

walking in the street and determined what they were doing, where they were going and the

reason they were carrying the dog, Officer Kuepfer asked them their names.[2]  He said all three

individuals gave him their first and last names.  Then Officer Kuepfer "let dispatch know who I

was out with.  I was out with these three guys, these are who they are, can you check local wants

on them?"  (Tr. at 14.)  He said he called dispatch to run the warrants check on his portable radio

while he was still standing with Defendant and his companions.  (Tr. at 46.)  Officer Kuepfer did

not ask them for identification before running the warrants check.  He also did not ask for their

permission to run the check, but instead contacted dispatch immediately after the men provided

their names.   (Tr. at 46.)  The warrants check revealed that Defendant had an outstanding

warrant for his arrest for a probation or parole violation.  Officer Kuepfer then advised

Defendant he may have a warrant and asked for his date of birth and social security number to

verify that he was the correct individual.  Defendant gave Officer Kuepfer his date of birth and

social security number, which confirmed it was, in fact, Defendant who had the outstanding

warrant.

---

    [2]  He later testified that the reason he obtained their names was because if a "report came in the next day. . .
[that] my dog was stolen last night, at least now I have some names to go with, hey I saw these three guys last night
and they were carrying a dog."  (Tr. at 30.)

After confirming the warrant, Officer Kuepfer arrested Defendant.  He said Defendant was "compliant" and "nice."  (Tr. at 17.)  As he was turning around to be handcuffed, Defendant told Officer Kuepfer, "Just so you know, I do have guns on me."  *Id.*  Officer Kuepfer replied, "That's fine, just don't go reaching for them."  *Id.*  Once Defendant was handcuffed, Officer Kuepfer did a pat down search of Defendant and discovered a .22 caliber handgun in his pants pocket, a .32 caliber revolver in his waistband and some bullets.  During the arrest of Defendant, Officer Weekly arrived as backup.  Officer Kuepfer initially estimated ten minutes elapsed from the time he saw the individuals on the street until he placed the handcuffs on Defendant.  (Tr. at 18.)  However, later he said the encounter lasted three to five minutes from the time he stopped his patrol car until dispatch advised him of Defendant's outstanding warrant.  (Tr. at 33.)  At no time during the exchange did Officer Kuepfer advise the men they were or were not free to leave.  (Tr. at 17, 29.)

Finally, Officer Kuepfer testified that it is his practice to approach citizens committing a violation of an ordinance and obtain "general information" about them.  (Tr. at 33.)  He said he "find[s] out their names [and] let[s] them go."  *Id.*  He said if Defendant "had not had the warrant, I would have said okay, you guys have a good night."  (Tr. at 32.)  He affirmed it is his "usual routine" to "stop[ ] people, ask where they're going, what they're doing, why they're out, and then if everything clears up they get to go on their way."  (Tr. at 36.)  In this case, when asked "had these gentlemen been walking on the sidewalk when you approached them, would you still have stopped them," Officer Kuepfer responded, "Probably not, no."  (Tr. at 42.)  He said although he had not received any complaints that night, when he saw Defendant and his friends "walking around at midnight, it's kind of, it's not unusual, but to me, it's like, well, I

should probably stop and talk to them, find out, hey, you know, you guys are out late.  What's

going on?  You know, just talking to them.  Not a, like, any reason to arrest them or anything

like that.  Because I'm out at midnight and they're out at midnight, providing a police presence."

(Tr. at 45.)

### ANALYSIS

The Tenth Circuit has identified three categories of police-citizen encounters:  1)

consensual encounters that do not implicate the Fourth Amendment; 2) investigative detentions

that are Fourth Amendment seizures of limited scope and duration and must be supported by a

reasonable suspicion of criminal activity; and 3) arrests, the most intrusive of Fourth

Amendment seizures and reasonable only if supported by probable cause.  *United States v.*

*Ringold*, 335 F.3d 1168, 1172 (10th Cir. 2003) (citing *United States v. Torres-Guevara*, 147 F.3d

1261, 1264 (10th Cir. 1998)).  In this case, the government argues the encounter between Officer

Kuepfer and Defendant was consensual, or alternatively, supported by reasonable suspicion of

criminal activity.  The Court addresses the latter argument first.

#### A.      Investigative Detention

The government claims Officer Kuepfer had authority to conduct an investigatory

detention of Defendant and his companions for two reasons.  First, they were engaged in a

pedestrian traffic violation by walking in the middle of the street.  Second, Officer Kuepfer had

reasonable suspicion that they were engaged in criminal activity based upon the totality of the

following circumstances: 1) the traffic violation; 2) the time of day (midnight); 3) the high crime

area; and 4) the fact that the men were carrying a dog.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). Investigative detentions must be supported by reasonable suspicion. *United States v. Guerrero*, 472 F.3d 784, 787-88 (10th Cir. 2007) (citation omitted). The reasonableness of an investigatory detention is a dual inquiry. First, the court determines "whether the officer's action was justified at its inception." *United States v. Walker*, 933 F.2d 812, 815 (10th Cir. 1991) (quoting *Terry*, 392 U.S. at 20). Second, the court evaluates "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.*

"Reasonable suspicion is defined as a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Guerrero*, 472 F.3d at 787 (quoting *Cortez*, 449 U.S. at 417-18). "The evaluation is made from the perspective of the reasonable officer, not the reasonable person." *United States v. Quintana-Garcia*, 343 F.3d 1266, 1270 (10th Cir. 2003). In evaluating a police officer's justification for conducting an investigative stop, courts consider "the officer's conduct 'in light of common sense and ordinary human experience,' while deferring to 'the ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'" *United States v. Stephenson*, 452 F.3d 1173, 1176 (10th Cir. 2006) (quoting *United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996)). Finally, "[t]he Supreme Court has instructed that courts not examine each factor adding up to reasonable suspicion individually, but that they 'evaluate how convincingly they fit together into a cohesive, convincing picture of illegal conduct.'" *Guerrero*, 472 F.3d at 787 (quoting *Arvizu*, 534 U.S. at 274).

### 1.       Pedestrian Traffic Violation

It is undisputed that Defendant and his companions were walking in the street when

Officer Kuepfer stopped them.  Officer Kuepfer described the men as walking "abreast" of each

other approximately one and a half to two feet apart, occupying the westbound lane of traffic.

They were walking against traffic.  (Tr. at 25.)  Defendant does not dispute the officer's

description of their location in the street.  According to Section 66-7-339 NMSA 1978[3]:

> A.       Where sidewalks are provided it shall be unlawful for any pedestrian to
> walk along and upon an adjacent roadway.
>
> B.       Where sidewalks are not provided any pedestrian walking along and upon
> a highway shall when practicable walk only on the left side of the roadway
> or its shoulder facing traffic which may approach from the opposite
> direction.

A "sidewalk" is defined as "a portion of street between the curb lines, or the lateral lines of a

roadway, and the adjacent property lines, intended for the use of pedestrians." § 66-1-4.16(H)

NMSA 1978.

In this case, a fairly wide dirt path runs between the roadway and the property fences

erected on the westbound side of the street where Defendant and his companions were walking.

(*See* Def. Exs. A & B; Gov. Exs. 1 & 2.)  The path appears to be used for pedestrian traffic.

While it appears worn from foot traffic, it has patchy spots of grass and does not appear to be

maintained.  An abbreviated and more narrow dirt path exists on the opposite side of the street,

but does not appear to continue in front of the houses that do not have fences.  The photographs

submitted by the parties do not indicate whether the path continues onto the next residential

block.  There is also no evidence before the Court as to the location of the residential property

---

[3] The City of Roswell Ordinance No. 12-6-14.5 tracks the language of the New Mexico statute and
prohibits the same conduct.

lines.  An examination of the photographs showing both sides of the street indicate the

residential property lines may run to the fence line or the curb.  Presumably they would be

consistent for both sides of the street.  However, the Court has not been given sufficient evidence

to make that determination.  Therefore, based upon the photographic evidence before the Court,

although the path appears to be used by pedestrians, the Court is unable to declare the path

constitutes a "sidewalk" as defined by the statute.  Notably, the statute does not require that a

sidewalk be made of concrete or other similar material, so the path may, in fact, be a sidewalk.

Nevertheless, the evidence is insufficient to make that determination here.

The resolution of whether the dirt path is a sidewalk is not dispositive of the issue.  It is

clear that if the path constitutes a sidewalk, Defendant and his companions were committing a

traffic violation by walking in the street.  However, if the path does not constitute a sidewalk,

then Defendant and his companions were required to "walk only on the left side of the roadway

or its shoulder facing traffic which may approach from the opposite direction."  § 66-7-339(B)

NMSA 1978.  Although they were walking in the direction of oncoming traffic, the evidence

shows that they were walking abreast of each other occupying the entire westbound lane of

traffic.  The statute does not have a special allowance for groups.  The statute applies

individually, therefore each of the men should have been walking to the left of the roadway or on

the shoulder so as not to impede traffic.  By occupying the entire westbound lane, the men

clearly impeded traffic and were in violation of Section 66-7-339(B) and Roswell Ordinance No.

12-6-14.5.  Therefore, Officer Kuepfer had sufficient justification to stop Defendant and his

companions because they were committing a pedestrian traffic violation.  *See United States v.*

*Bustillos-Munoz*, 235 F.3d 505 (10th Cir. 2000) (brief detention of motorist with headlight that

appeared to shine too bright lawful); *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir.

1995) (observed traffic violation sufficient to support a brief investigatory detention); *United*

*States v. Luckett*, 484 F.2d 89, 90 (9th Cir. 1973) (brief detention of man for jaywalking lawful).

Next, this Court must evaluate whether Officer Kuepfer's detention of Defendant and his

companions was "reasonably related in scope to the circumstances which justified the

interference in the first place." *Walker*, 933 F.2d at 815.  An officer may not extend a traffic stop

beyond a reasonable duration necessary to accomplish the purpose of the stop unless the

individual consents to further questioning or the officer has reasonable suspicion to believe

"other criminal activity is afoot." *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007)

(citing *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006)).

In this case, Officer Kuepfer testified that it was not his intention to issue a citation to

Defendant and his companions.  Instead, upon stopping them, he gave a "verbal warning" that

they could not walk in the street.  (Tr. at 19.)  He then asked a series of questions about what the

men were doing, where they were going, and why they were carrying the dog.  He testified that

he was satisfied with the answers given by Defendant and his companions regarding their

activities and the dog.  Therefore, at that point, Officer Kuepfer had accomplished his stated

purpose for the stop of issuing a warning regarding the traffic violation and had satisfied his

concerns about any other possible criminal activity they may have been involved in with respect

to the dog.  There is no evidence that additional suspicion of criminal activity arose during the

course of the conversation.  On the contrary, Officer Kuepfer said their was nothing "unusual"

about Defendant and his companions' manner and that "all of them were nice."  (Tr. at 17, 37.)

Officer Kuepfer did not express any concern for his safety and did not say the men did anything

to give him reason to believe they were doing anything illegal.  Consequently, Officer Kuepfer

had no lawful basis for continuing the detention to run a warrant check on Defendant and his

companions.  *Cf. United States v. Lopez*, 443 F.3d 1280 (10th Cir. 2006) (Tenth Circuit affirmed

suppression of evidence obtained pursuant to unlawful warrants check after officer obtained

sufficient information from defendant to determine he was not engaged in criminal activity, but

nonetheless continued to detain defendant to run warrants check).

In a pedestrian case considered by the Ninth Circuit, *United States v. Luckett*, 484 F.2d at

90-91, two city police officers in Gardena, California observed a man cross a street, at 12:30

a.m., against a traffic light.  The officers stopped to question the man about a possible

jaywalking violation and requested his identification.  The man produced five pieces of

identification and the officers issued a citation, but detained the man to complete a warrants

check for the sole reason that a driver's license was not included in the identification the man

provided.  When the warrants check revealed an outstanding traffic warrant, the officers arrested

the man and discovered a package of counterfeit money orders in his pocket.  The court

determined that the officers could detain a man stopped for jaywalking only for the time

necessary to obtain sufficient identification and issue a citation.  The Ninth Circuit held that

continued detention for a warrants check was improper because the officers lacked reasonable

grounds to suspect a warrant might be outstanding.  *See also Walker*, 933 F.2d at 816 (detention

of defendant to ask additional questions unrelated to issuance of citation unreasonable); *United*

*States v. Guzman*, 864 F.2d 1512, 1519 (10th Cir. 1988) (detention of motorist stopped for

seatbelt violation exceeded lawful scope when officer asked additional questions despite having

no reasonable suspicion of additional criminal activity).

11

Similarly, in *United States v. Doe*, 801 F.Supp. 1562 (E.D. Tex. 1992), an officer stopped the defendant for rolling through a stop sign, a minor traffic violation for which custodial arrest is not permitted. *Cf. Barnett v. United States*, 525 A.2d 197, 199 (D.C. 1987) (officer could not make a custodial arrest for violation of pedestrian traffic regulation that authorized only a monetary sanction). The officer obtained the driver's license and the identification of the passengers. He also determined that the car was not stolen by running it through NCIC. He then continued to run a warrants check on the defendant. The court determined that the officer had exceeded the scope of the traffic stop because at no point during the stop did reasonable suspicion arise that the defendant was engaged in criminal activity. Running a warrants report without reasonable suspicion violated the defendant's Fourth Amendment rights. Therefore, the officer's discovery that the defendant had an outstanding warrant, which led to his arrest and the search of his vehicle revealing weapons and drugs was unlawful and the evidence was suppressed.

Likewise, in this case, Officer Kuepfer lacked reasonable suspicion that Defendant was engaged in additional criminal activity at the time he ran the warrants check. Therefore, the guns and ammunition discovered in Defendant's possession pursuant to his arrest constitute fruit of the poisonous tree and should be suppressed absent a lawful justification for discovery of the warrant. *See Lopez*, 443 F.3d at 1286 (evidence obtained during search made pursuant to illegally discovered arrest warrant constitutes fruit of the poisonous tree and should be suppressed); *Luckett, supra*.

**2.** **Criminal Activity**

The government also argues Officer Kuepfer had reasonable suspicion to detain

Defendant and his companions based upon Officer Kuepfer's belief that they may be engaged in

criminal activity other than the traffic violation.  Specifically, Officer Kuepfer stated he believed

the men may have been involved in the possible theft of the dog they were carrying.  The

government argues Officer Kuepfer's suspicion of criminal activity is supported by the following

facts:  1) the men were engaged in a pedestrian traffic violation by walking in the street; 2) it was

approximately midnight; 3) criminal activity had recently been reported in the area; and 4) the

men were carrying a pit bull dog.

The Court examines the totality of the circumstances to determine whether Officer

Kuepfer had a "particularized and objective basis" for suspecting Defendant was engaged in

criminal activity.  *See Arvizu*, 534 U.S. at 273.  The Court is prohibited from separating out each

factor and rejecting "the officer's determination of reasonable suspicion simply because each

factor, standing alone, might be 'readily susceptible of an innocent explanation.'" *United States*

*v. Quintana-Garcia*, 343 F.3d at 1270-71 (citing *United States v. Gandara-Salinas*, 327 F.3d

1127, 1130 (10th Cir. 2003)).

In this case, an examination of the totality of the circumstances supports a finding that

Officer Kuepfer did not have reasonable suspicion that Defendant was engaged in the theft of a

dog.  First, as stated by the Tenth Circuit, some factors identified as allegedly supporting

reasonable suspicion are "so broad as to be indicative of almost nothing." *Guerrero*, 472 F.3d at

787 (identifying as examples traveling from a source city and the presence of religious

iconography (case citations omitted)).  The Court finds that walking in the middle of the street is

13

such a factor.  While admittedly a violation of the law, it is not uncommon behavior for citizens

to walk in the street, even when sidewalks are available.  This infraction is hardly indicative of

other criminal conduct.  Consideration of the additional factors identified by the government in

this case, makes the traffic violation no more persuasive or dispositive.  No reasonable officer

would find that walking in the street supports a suspicion of theft.

The Court finds that the time of day and criminal activity in the area described by Officer

Kuepfer are more likely to support a reasonable belief of possible criminal activity.  Standing

alone these factors are not sufficient.  However, when combined with more particularized facts,

they may support a reasonable suspicion that an individual is engaged in criminal activity.  *See*

*Illinois v. Wardlow*, 523 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *United States v.*

*Gutierrez-Daniez*, 131 F.3d 939, 942 (10th Cir. 1997).  Here, the more particular fact identified

by Officer Kuepfer was that the men were carrying an adolescent pit bull dog.  It was his belief

that the dog may have been stolen.  However, the facts as described by Officer Kuepfer do not

support a reasonable suspicion that the dog was stolen.  Officer Kuepfer testified that from his

patrol car he was able to see that the dog was young and not wearing a leash and possibly no

collar.  The dog did not act aggressive or as if it did not know the individuals carrying it.

Additionally, Defendant and his companions did not act suspicious as if engaged in criminal

activity.  On the contrary, Officer Kuepfer testified that "they really weren't doing anything out

of the ordinary."  (Tr. at 53.)  Furthermore, Officer Kuepfer did not say any of the criminal

activity in the area involved the theft of a dog, nor had any such report been made that night.  In

fact, no reports of any criminal activity in the area had been made at the time Officer Kuepfer

stopped Defendant and his companions.  Although carrying a dog may be slightly unusual, it is

not unusual if the dog is young, wiggling and has no leash or other means of control.  Therefore,

after considering the totality of the circumstances, the Court finds that Officer Kuepfer lacked

reasonable suspicion of criminal activity to detain Defendant and his companions other than the

pedestrian traffic violation discussed previously.[4]

Finally, even if the Court had found these factors supported a finding that Defendant may

have been engaged in criminal activity, as discussed above, once Officer Kuepfer was satisfied

with the explanation given by Defendant and his companions about the dog, he no longer had

reasonable suspicion to continue the detention of the men and the subsequent warrants check.

Therefore, for the same reasons stated above, the continued detention of Defendant exceeded the

scope of the alleged justification for the stop, which was to determine why the men were

carrying the dog.

### B.      Consensual Encounter

The government argues in the alternative that the encounter between Officer Kuepfer and

Defendant was consensual, and therefore the Fourth Amendment was not implicated.  In order to

determine whether a particular encounter constitutes a seizure, a court must consider all the

circumstances surrounding the encounter to determine whether the police conduct would have

communicated to a reasonable person that the person was not free to decline the officer's request

or otherwise terminate the encounter.  *Ringold*, 335 F.3d at 1172; *see also Florida v. Bostick*,

501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The inquiry is objective.  *Id.*  "As

long as a reasonable innocent person, as opposed to a person knowingly carrying contraband,

---

[4] Although Officer Kuepfer's subjective beliefs are not relevant to the Court's consideration, it is
noteworthy that Officer Kuepfer himself stated that he would not have approached the men if they had been walking
on the sidewalk, thus indicating he was not truly that concerned about the dog.  (Tr. at 42.)

would feel free to leave, such encounters are consensual and need not be supported by reasonable suspicion of criminal activity." *Id.* (citing *United States v. Laboy*, 979 F.2d 795, 798 (10th Cir. 1992) (citing *Bostick, supra*)).  In *Terry*, the Supreme Court stated that a seizure has occurred "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  392 U.S. at 19 n. 16.

The Tenth Circuit has identified various factors relevant to a consideration of whether an encounter is consensual, including: 1) the threatening presence of several officers; 2) the brandishing of a weapon by an officer; 3) some physical touching by an officer; 4) use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; 5) prolonged retention of a person's personal effects such as identification and plane or bus tickets; 6) a request to accompany the officer to the station; 7) interaction in a nonpublic place or a small, enclosed place; and 8) absence of other members of the public. *Ringold*, 335 F.3d at 1172 (citing *United States v. Hill*, 199 F.3d 1143, 1147-48 (10th Cir. 1999)). "No single factor can dictate whether a seizure occurred." *Id.*; *see also United States v. Glass*, 128 F.3d 1398, 1406 (10th Cir. 1997).

In this case, several of the factors indicative of a consensual encounter are present. Officer Kuepfer was alone in an open, public area.  He did not use an aggressive tone or threatening language.  He did not touch Defendant or brandish a firearm.  Defendant was accompanied by two other individuals, and therefore Officer Kuepfer was outnumbered three to one.  Furthermore, he did not take or detain any of Defendant's personal effects.  However, the existence of these facts does not make the encounter consensual.  The fact that Officer Kuepfer was alone does not mean he was unable to detain Defendant and his companions.  Individual

officers routinely detain multiple people in ordinary traffic stops.  Moreover, the fact that Officer

Kuepfer was courteous does not mean a detention did not take place.  Likewise, Defendant's

cooperation during the encounter does not equal consent.

Here, Officer Kuepfer very clearly told Defendant and his companions to "hold up."  (Tr.

at 13.)  He then advised the men that they were violating the law by walking in the street.

Although Officer Kuepfer testified that it was not his intention to issue a citation, Defendant had

no way of knowing that.  A reasonable person in Defendant's position stopped on the street by a

police officer and advised that he or she is breaking the law would not likely have felt free to

leave until the officer had finished giving a warning or issuing a citation.  Additionally, Officer

Kuepfer testified that he intended to hold the men until he had completed his investigation

concerning the dog.  (Tr. at 32.)  Although Officer Kuepfer's intent may not have been orally

communicated to Defendant, a reasonable person could have found the officer's intent

communicated through his general show of authority, direction to "hold up," physical proximity

to Defendant and questioning about the ownership of the dog.  Finally, the fact that Officer

Kuepfer contacted dispatch to run a warrants check while remaining standing next to Defendant

would not give a reasonable person the impression that he or she was free to walk away from the

encounter until the check was cleared or the officer advised the individual he or she was free to

leave.  Therefore, based upon the totality of the circumstances in this case, the Court finds the

encounter between Officer Kuepfer and Defendant was not consensual.  *See United States v.*

*Hernandez,* 93 F.3d 1493, 1498 (10th Cir. 1996) ("A person is seized only when that person has

an objective reason to believe that he or she is not free to end the conversation with the officer

and proceed on his or her way." (internal citations omitted)).

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence (Doc.

No. 21) is **GRANTED**.

Dated: February 8, 2010.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE